**Simon PLAMONDON, On Relation of the COWLITZ TRIBE OF INDIANS**

v.

**The UNITED STATES.**

**Appeal No. 11-71.**

United States Court of Claims.

Oct. 13, 1972.

I. S. Weissbrodt, attorney of record, for appellant; Abe W. Weissbrodt, Richmond F. Allan and Ruth W. Duhl, Washington, D. C., of counsel.

A. Donald Mileur, Washington, D. C., with whom was Asst. Atty. Gen. Kent Frizzel, for appellee; John D. Sullivan, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS and KUNZIG, Judges.

ON CROSS–APPEALS FROM THE INDIAN CLAIMS COMMISSION

KUNZIG, Judge.

This case is before us on cross-appeals from a decision of the Indian Claims Commission which held, upon rehearing, that the "United States deprived the Cowlitz Tribe of its aboriginal title as of March 20, 1863, without the payment of any consideration therefor." Simon Plamondon v. United States, 25 Indian Cl. Comm'n 442, 451–452 (1971). Neither party is contesting the Commission's finding as to the extent of the aboriginal title of the Dowlitz Tribe. Both, however, contend that the Commission erred in its determination of the date of taking, *i. e.* the date when the title of the Cowlitz was *extinguished.*

We agree with the determination of the Indian Claims Commission and therefore affirm its opinion.

Plaintiff, noting that Indian title can only be extinguished by unequivocal acts of the United States (United States v. Santa Fe Pac. R.R., 314 U.S. 339, 62 S. Ct. 248, 86 L.Ed. 260 (1941) ), contends that the acts relied upon by the Commission were insufficient to establish an

extinguishment of Indian title as of March 20, 1863.

Plaintiff argues that no treaty was ever made with the Cowlitz, that no removal of the tribe from its ancestral home was ever effected and that the Cowlitz never accepted a reservation from the United States. Plaintiff contends that the Proclamation of March 20, 1863 was totally ineffective as an act of extinguishment because it merely offered for sale a small portion (14%) of the Cowlitz land.

Plaintiff asserts that the United States took the Cowlitz land on a piecemeal basis following the collapse of treaty negotiations with the tribe in 1855. Plaintiff argues before the Commission and before this court for four separate dates of taking. Plaintiff contends that the first unequivocal act was on February 22, 1889 when sections 16 and 36 of each township was granted to the State of Washington by an Act of Congress of that date (35,934.22 acres). (Act of February 22, 1889, 25 Stat. 676.) The next three alleged taking dates were February 20, 1893, February 22, 1897, and March 2, 1907. These are the dates of Presidential proclamations incorporating 559,762.79 acres of the tribe's land into public forest reserves (27 Stat. 1063; 29 Stat. 896; 34 Stat. 3296.) The last date urged upon us by plaintiff is May 13, 1895. This is alleged to be the average taking date for the remaining 1,124,501.69 acres which were taken over a period of many years by issuance of patents to entrymen, by selection of lands by the State of Washington, and by Government approval of lands selected by railroads.

The Commission noted, in its opinion, that "[a]ll of the actions alleged by plaintiff to be takings of its lands would ordinarily constitute extinguishment of title." 25 Indian Cl. Comm'n at 449. However, the Commission found sufficient evidence of unequivocal acts by the United States to establish the date of extinguishment several decades earlier.

It is true that Congress originally expressed its intent that the claims to land of all tribes west of the Cascade Mountains should be extinguished by treaty. (Act of June 5, 1850, 9 Stat. 437.) However, there was a gradual change in the attitude of Congress. It declared that, as of April 1, 1855, all the lands west of the Cascades would be subject to public sale. (Act of February 14, 1853, 10 Stat. 158.) The Commission notes that,

[i]t is clear that Congress anticipated that Indian title would be extinguished by 1855, because offering lands for public sale is totally inconsistent with the continued existence of Indian title in that land.

25 Indian Cl. Comm'n at 450.

Most of the tribes in the area did enter into treaties. However, the Cowlitz was not among them. Congress appropriated money, for the fiscal year 1861, for the expenses of removing non-treaty Indians in the Oregon and Washington Territories. Although there is no evidence that any money was actually used for the removal of the Cowlitz,

the appropriation reveals a change in congressional policy. Rather than negotiating treaties with these tribes, Congress now intended that their aboriginal title be extinguished by their removal from their lands.

*Id.* at 450–51.

The Commission also found that the Chehalis Reservation had been set aside, as early as 1860, for the non-treaty Indians of southwest Washington, including the Cowlitz.

The Presidential proclamation of 1863 only put up for sale a small percentage of the Cowlitz lands (14%). But it appears that these lands (in the western region of the Cowlitz lands) were in fact the ones upon which most of the Cowlitz lived and earned their living, to a large extent, by working for the white settlers. There was no evidence presented to the Commission to show how many, if any, of the Cowlitz still hunted and food gathered in the eastern region of the Cowlitz lands.

By 1863 there was substantial settlement by the whites. They settled in the same areas where the Indians had their villages. Even assuming that plaintiff's estimate of the number of Cowlitz in the area is correct (500),[1] the whites greatly outnumbered the Indians. In addition the evidence shows that the Indians intermingled with the whites and no longer maintained an independent existence. They were deprived of the use of exclusive occupancy of their aboriginal lands. *See* Northern Paiute Nation v. United States, 7 Indian Cl. Comm'n 322 (1959).

We need not decide whether taken singly, the change in congressional intent, the establishment of the Chehalis Reservation, or the Presidential proclamation of March 20, 1863, would be sufficient to extinguish Cowlitz title. We agree with the Commission that all three together are clearly sufficient.

> As stated by Chief Justice Marshall in Johnson v. M'Intosh, [21 U.S. (8 Wheat.) 543, 586 [5 L.Ed. 681] (1823)], 'the exclusive right of the United States to extinguish' Indian title has never been doubted. And whether it be done by treaty, by the sword, by purchase, by the exercise of complete dominion adverse to the right of occupancy, or otherwise, its justness is not open to inquiry in the courts. Beecher v. Wetherby, 95 U.S. 517, 525 [24 L.Ed. 440].

United States v. Santa Fe Pac. R.R., 314 U.S. at 347, 62 S.Ct. at 252.

Defendant asserts that the Commission's original decision prior to rehearing, holding that the taking date was March 3, 1855, was correct and should be reinstated by this court.

Defendant contends that since Indian title is extinguished by loss of exclusive use and control, the date of extinguishment should be the date of the termination of the unsuccessful treaty negotiations. From that date onward defendant alleges that the United States treated the Cowlitz lands as part of the public domain by surveying them, allowing them to be settled and permitting the titles to be patented.

Defendant further contends that the date of extinguishment is controlled by prior decisions of the Indian Claims Commission. Upper Chehalis Tribe v. United States, 8 Indian Cl. Comm'n 436 (1960); Chinook Tribe v. United States, 6 Indian Cl. Comm'n 177 (1958); Muckleshoot Tribe of Indians v. United States, 3 Indian Cl. Comm'n 658 (1955), aff'd by order, 174 Ct.Cl. 1283, cert. denied, 385 U.S. 847, 87 S.Ct. 88, 17 L.Ed. 2d 77 (1966); Nooksack Tribe v. United States, 3 Indian Cl. Comm'n 479 (1955) aff'd, 162 Ct.Cl. 712 (1963), cert. denied, 375 U.S. 993, 84 S.Ct. 633, 11 L.Ed.2d 479 (1964).

We agree with the Commission's holding that,

> the evidence indicates that the Government's activities in Cowlitz territory and its relationship with the Cowlitz Tribe were not significantly affected by its failure to obtain a formal cession of Cowlitz lands in March, 1855.

25 Indian Cl. Comm'n at 445.

Congress, by the Act of September 27, 1850 (9 Stat. 496), did create the office of Surveyor General of the Oregon Territory and direct him to survey the lands west of the Cascade Mountains, which at that time were all still Indian land. As noted earlier, Congress had just recently passed legislation expressing its intent to extinguish, by treaty, the title of the Indians in this area. Since the Act did not require that the job of surveying be delayed until the Indian title to the land was extinguished, it is apparent that Congress did not intend the mere act of surveying to have any effect upon the Indian title of these tribes.

Similarly, the limited settlement by whites on the Cowlitz land up to 1855

1. Defendant estimates 150–300 Cowlitz.

was not sufficient to extinguish its Indian title. The Commission noted that,

[b]y March 3, 1855, no more than 150 settlements had been made in Cowlitz territory under the provisions of the Donation Act [Act of February 14, 1853, 10 Stat. 158]. Thirty-five additional settlements were made between March 3, and December 1, 1855. No further settlements were made on Cowlitz land until after the land was opened to public sale in 1863.

*Id.* at 446.

We agree with the Commission's holding that this limited settlement did not significantly disrupt the Cowlitz way of life. It was not an interference sufficient to constitute an extinguishment of Cowlitz title.

It should also be noted that the United States had not issued any patents to donation claimants on Cowlitz lands prior to March 3, 1855. In fact it did not do so for several years thereafter.

The Commission correctly distinguished the cases which defendant says require the Commission to choose March 3, 1855, as the date of taking.

In the *Nooksack* and *Muckleshoot* cases, the claimant's aboriginal lands were situated within the boundaries of the territory ceded to the United States by the Treaty of Point Elliott (January 22, 1855, 12 Stat. 927). Even though these tribes did not participate in the treaty, the Commission held that the tribes' aboriginal title was extinguished on the effective date of the treaty because "[a]fter the consummation of the treaty the United States considered all of the lands purportedly ceded to be public lands." These cases are distinguishable from our current situation because there is no treaty which purports to cede the Cowlitz lands to the United States.

In the *Chinook* case, the tribe signed a treaty of cession which was never ratified by the United States. The Commission found that notwithstanding the failure to ratify, the United States assumed control over the aboriginal title area thereby depriving the Chinook of their lands. The *Chinook* case is inapplicable here because the Cowlitz Tribe never signed a treaty.

Defendant claims that the *Upper Chehalis* case is factually on all fours with this one. However, there is one critical difference. In the *Upper Chehalis* case the date of taking was not put in issue by either party. Both parties requested the March 3, 1855 date. The holding in the *Chehalis* case, involving a different plaintiff on an issue that was not fully litigated, is not binding on the Cowlitz.

Therefore, both appeals are denied and the Commission's holding that "the United States deprived the Cowlitz Tribe of its aboriginal Indian title as of March 20, 1863, without payment of any consideration therefor" is affirmed. Plaintiff is thus entitled to recover under Section 2, Clause (4) of the Indian Claims Commission Act. Accordingly this case is remanded to the Indian Claims Commission for further proceedings consistent with this opinion.

Affirmed and remanded.

DAVIS, Judge (concurring in part and dissenting in part):

I agree with the court in (a) rejecting defendant's argument that the "taking" date should be set back to March 3, 1855, and (b) upholding the Commission's selection of March 20, 1863 for valuation of the western portion of the area involved. Together with the majority, I see more than adequate support for the March 1863 date for that western region which the white settlers entered and occupied.

My dissent concerns the eastern part of the Cowlitz land. So far as this record shows, there were no settlers there and no substantial sales or dispositions in the 1860's, 1870's, and the first years of the 1880's. As the court's opinion points out, the presidential proclamation of 1863 put up for sale only 14% of the Cowlitz lands, and those were in the western segment (which we all hold to have been "taken" on March 20, 1863). Such a limited offer to settlers would not, by itself, extinguish Indian

title to the remaining territory, even if the proclamation be deemed to presage future exclusion of the Indians from the latter region. *See* Lipan Apache Tribe v. United States, 180 Ct.Cl. 487, 494 (1967). There would have to be something more effective than the expectation of additional extinguishments of aboriginal title.

In my view, there is insufficient factual basis, in the existing record, for finding an 1863 "taking" of the large eastern unsettled sector simply by lumping it with the western to-be-settled part covered by the proclamation. It is true that most of the Cowlitz seem to have lived in the western area, but there is no evidence and no findings by the Commission as to the extent to which, and for how long, the eastern portion may still have been used by the tribe in Indian style for hunting, fishing, and subsistence. The Commission did not really address itself to this problem.[1] I do not think that either this court or the Commission can summarily assume that these eastern lands, previously used in aboriginal fashion by the Cowlitz, were suddenly abandoned by the Indians after 1863, or that the members of the tribe became so "domesticated" at that time that they dropped their prior habit of ranging over the broad territory. Those are matters for further proof and detailed consideration by the fact-finding tribunal.[2] I would therefore remand for additional proceedings on this aspect of the claim.

COWEN, Chief Judge, joins in the foregoing opinion concurring in part and dissenting in part.

1. The Commission did find that "[t]his taking for sale of the townships stipulated in the 1863 proclamation—these townships covering the entire area of Cowlitz permanent settlement—so substantially interfered with the Cowlitz way of life as to constitute an extinguishment of their title to the entire area * * *." To my mind, this general and conclusory statement is not adequate as a finding that the eastern portion was abandoned, wholesale, at that time. There should be a more ex-

plicit determination as to hunting, fishing, and use of the eastern territory for subsistence after 1863. Moreover, it even appears that certain of the permanent Cowlitz villages lay outside of the tracts covered by the 1863 proclamation.

2. Once aboriginal title has been found, as in this case, the Government, not the tribe, would have the burden of showing its extinguishment by any particular date. *Cf.* Lipan Apache Tribe v. United States, 180 Ct.Cl. 487, 492 (1967).